PRESIDENT, DIRECTORS AND COMPANY OF THE GRAFTON BANK *vs.* WILLIAM M. BICKFORD & others.

The provision of the *St.* of 1856, c. 284, § 5, that if any judge of insolvency " shall, from sickness, absence or other cause, be unable to perform the duties required of him in any case arising within his jurisdiction," such duties shall be performed by the judge of the adjoining county, therein specified, does not extend to the case of a vacancy in the office of judge of insolvency in the county where the case is pending.

Proceedings in insolvency, commenced before a judge who has no jurisdiction, will be set aside on a bill in equity, filed under the *St.* of 1838, c. 163, § 18, more than a year after

MOTION to dissolve a temporary injunction heretofore granted on a bill in equity filed in June 1859, by creditors of Henry D. Stone, an insolvent debtor, to stay the proceedings in his case, upon the ground that Judge Hodges, the judge of insolvency before whom the proceedings were commenced, had no jurisdiction. The questions arising upon this motion were submitted to the court upon a statement of facts, so much of which as concerns the points decided was as follows :

" On the 21st of January 1858, the Honorable Alexander H. Bullock, judge of insolvency for the county of Worcester, resigned his office, and no other person was appointed and qualified to hold said office until after the proceedings of the Honorable Horace I. Hodges, which are set forth in the bill. Franklin County was the county adjoining Worcester, having the least number of inhabitants, according to the next preceding decennial census ; and Hampshire County was the county adjoining Franklin, having such least number, according to said census, and also the county adjoining Worcester, having such least number, except said Franklin.

" Before the 1st of January 1858 the Honorable Horace G. Newcomb, judge of insolvency for the county of Franklin, died, and no person was appointed and qualified to succeed him in said office till after said proceedings of said Hodges.

" On the 1st of November 1857 an order ' that this court be held at Worcester on the first Tuesday of each month,' had been passed by Judge Bullock, and recorded by the register of insolvency for the county of Worcester in the first page of the book in which are kept by said register the dockets and short memoranda of the proceedings of all the cases in insolvency which have been commenced in said county since the passage of the *St.* of 1858, *c.* 32, and of all such cases which have arisen in said county since the date of said order, including the case of said Stone. On the 23d of January 1858 the register entered in the first page of said book the following certificate, and transmitted a copy thereof as therein stated; and also recorded a copy of said certificate, and of the certificate of transmissio thereof, in the record of the first case in which said judge sat.

"' 1858 January 23d. Judge Bullock having resigned, a copy of the following certificate was transmitted to Hon. Horace I. Hodges, judge of insolvency in and for the county of Hampshire :

"' Worcester ss. January 22d 1858. I hereby certify that by the resignation of Honorable A. H. Bullock, late judge of insolvency in and for the county of Worcester, which resignation took effect on the 21st day of January inst., the office of judge of insolvency for said county is now vacant.

' John J. Piper, Register.'

" On the 2d of February, being the first Tuesday in said month, a large number of meetings in insolvency being appointed to be held, and there being no judge present, the said meetings were adjourned by said register to the 9th of February, and on that day this entry was made on said page :

"' 1858 February 9. The court was held, pursuant to adjournment, by Hon. Horace I. Hodges, judge of insolvency for the county of Hampshire, as acting judge for the county of Worcester.'

"During all the period from the resignation of said Bullock until a time after all said proceedings of said Hodges took place, Hodges acted in a great number of cases as judge of the insolvency court of the county of Worcester, and also as judge of the insolvency court of the county of Franklin, being all the cases that had arisen in those counties during said vacancies; and no other person had so acted.

"Said Hodges was personally present in the county of Worcester when the petition, hearing and other proceedings in the case of said Stone took place. The record of the proceedings in the case of said Stone is not yet fully made up, and the case is not yet closed. John J. Piper, who was register of insolvency for the county of Worcester during all said proceedings, now holds the office of register of probate and insolvency for said county."

Those parts of the argument only are reported, which affect the point decided by the court.

*C. Devens, Jr. & G. F. Hoar,* for the defendants. It may admit of grave doubts whether the plaintiffs are entitled to any remedy in equity; whether their remedy at law is not plain, adequate and complete; and whether a bill in equity will lie to try questions of jurisdiction of a court of record which is not alleged to be infringing on the jurisdiction of any other court; or to determine the right to his office of a judge acting in such court of record. But the defendants have no desire to raise any questions that do not directly affect the validity of their election as assignees and their right to act in such capacity.

The provisions of *St.* 1856, *c.* 284, § 5, authorize the judge of the insolvency court of the adjoining county, therein specified, to act in case of a vacancy in the office of judge of insolvency for any county, caused by death or resignation. This section is to receive a liberal construction, in accordance with the general policy of the system of which it forms a part. *Dearborn* v *Ames,* 8 Gray, 1. *Osgood* v. *Fernald,* 10 Gray,   .

This is not a question of defining the limits of the operation of the insolvent laws; but whether a particular clause will apply to a case admitted to be within the insolvent laws. The general

policy of the insolvent laws and the particular purpose of the *St.* of 1856, *c.* 284, alike require the construction contended for by the defendants.

The general policy of the insolvent law is equality among all creditors, instead of preference to the most diligent, which was the rule of the common law. To secure such equality, the statute makes many provisions, of which the section in question is one, for securing promptness and rapidity of action to prevent preferences or concealment of property by the debtor. It contemplates the necessity of interposing between the rendition of judgment and the issuing of execution; of interfering when property is removed from the State, and when it is fraudulently concealed, and in sundry other familiar cases, requiring the most instant remedy. For this end it recognizes the necessity that a magistrate should always be accessible who can issue process, and grant relief on a hearing of the most summary nature — thus differing from all the cases of probate courts. This is frequently as necessary to relieve the debtor from imprisonment, as to protect creditors from fraud. It cannot be supposed that the legislature meant to provide for the case of a temporary illness or absence of a judge, and to leave unprovided for the most important case, commonly of longer duration, of vacancy in the office.

The special purpose of the *St.* of 1856, was to substitute a court of record, having general jurisdiction of the subject matter, for a special magistrate, who is a ministerial officer, whose jurisdiction is personal, and confined to the case. The court still exists, though there be a vacancy in the office of judge. And there is no transfer of the case to an adjoining county, which might be inconvenient to parties interested; but the judge comes in from the adjoining county.

The words "sickness, absence or other cause," used in § 5, concerning the judge, have the same extent as "death or absence" of the register in § 14; the general word "absence" being mentioned in each, but different particulars enumerated. The legislature intended to provide for all cases where there was no judge in the county, legally capable of performing the duties. This construction is in accordance with opinion of the commis-

sioners on the revision of the statutes in 1859.  *c.* 118, § 4, note
A similar construction has been adopted by this court in like
cases.  *Opinion of Justices,* 14 Mass. 470.  *Williams* v. *Robinson,* 6 Cush. 333.

Since the establishment of the insolvent system, there have
been only two or three years during which there were not more
than one officer vested with jurisdiction in each county.  *Sts.*
1838, *c.* 163, §§ 1, 17; 1848, *c.* 304, §§ 1, 3; 1850, *c.* 207;
1851, *c.* 322; 1852, *c.* 112.

The legislature have recognized the right of Hodges to sit in
these cases, by an express legislative declaration of the construction of this statute.  Resolve of 1858, *c.* 35.  And this is entitled to weight in the construction of so recent a statute.  *Bacon,
appellant,* 7 Gray, 391, 392.

Hodges was judge of insolvency *de facto* for the counties of
Franklin and Worcester, and his title to his office or the validity
of his proceedings therein cannot be inquired into except by *quo
warranto.*  It appears from the record that, acting under a claim
of right, he was holding the stated terms of the court in which
these proceedings were had and under the seal of which this
warrant issued.  *Commonwealth* v. *Fowler,* 10 Mass. 301.  *Fowler* v. *Bebee,* 9 Mass. 231.  *Bucknam* v. *Ruggles,* 15 Mass. 180
*Doty* v. *Gorham,* 5 Pick. 487.

The plaintiffs have been guilty of such laches as to forfeit any
title to equitable relief.  The proceedings had gone on for more
than a year previous to the date of their bill, all the facts relied
upon by them were either within their knowledge or patent on
the public records, and they should not be allowed, after property has been collected and transferred and valuable rights are
depending upon them, to question them.  An application in
equity, in the nature of an appeal, should not be so long delayed, when an appeal at law under the same statute must be
made in ten days.  *St.* 1838, *c.* 163, §§ 4, 18.

The plaintiffs were creditors, entitled to have all the proceedings revised on appeal or petition, and cannot question their
regularity collaterally.  *Whithead* v. *Mallory,* 4 Gray, 180.  *Partridge* v. *Hannum,* 2 Met. 569.  *Wheelock* v. *Hastings,* 4 Met.

504.   *Grant* v. *Lyman,* 4 Met. 470.   *Penniman* v. *Freeman,* 3 Gray, 248.   *Delafield* v. *Freeman,* 6 Bing. 224.

If the question is doubtful, the disastrous consequences which would follow from setting aside these proceedings are to be regarded.   Opinion of Thomas, J., 8 Gray, 23.

*B. F. Thomas,* (*W. F. Slocum* with him,) for the plaintiffs The jurisdiction of this court to determine this question upon this process is clear under *St.* 1838, *c.* 163, § 18.   *Partridge* v v. *Hannum,* 2 Met. 569.   *Hanson* v. *Paige,* 3 Gray, 239.

By *St.* 1856, *c.* 284, § 1, a court of insolvency is established for each county, and a judge appointed for each county, whose jurisdiction is to be the same as that of commissioners of insolvency under former statutes.   *Sts.* 1856, *c.* 284, § 2 ; 1848, *c.* 304, § 3 ; 1838, *c.* 163, §§ 1, 17.   That jurisdiction is limited to the county, except so far as it is extended by § 5 of *St.* 1856 *c.* 284.   This section provides for the inability of a judge in a county to perform the duties in any given case, from sickness, absence or other cause, or when he is interested in the case. The case of a vacancy in the office by death or resignation is not provided for, as it would have been had such been the intention of the legislature, as in *Sts.* 1838, *c.* 163, § 17 ; 1850, *c.* 207, § 1 ; 1856, *c.* 284, § 1.

In the legislation of the Commonwealth, in the creation of courts having, like the insolvent court, jurisdiction throughout a county, it has not been usual to provide for a transfer of the duties to any judge or court in another county.   Where a vacancy has arisen by death or resignation, the practice has been to wait till the office is filled, as in the case of the probate court.   *Sts.* 1783, *c.* 46, § 3; 1810, *c.* 36 ; 1817, *c.* 190, § 5.   Rev. Sts. *c.* 83, § 15.

When a court of insolvency, a court of record, having a single permanent judge, with jurisdiction throughout the county, was established, the same policy was adhered to.   One obvious reason for this is, that the business and jurisdiction of the several courts may be kept distinct and separate.   Another is, that the business of one county court should not, by the failure of executive appointment, be transferred to the judge of another county and court.   The effect of such a construction would be, that the

48 *

executive need appoint but one or two judges of insolvency throughout the State.

The words of the *St.* of 1856, *c.* 284, § 5, are, " If any of said judges shall," from one of the causes stated, " be unable to perform the duties required of him in any case." Such language could not aptly nor appropriately be used in relation to a judge who was dead, or had ceased to be judge by resignation. Inability to perform duties cannot be predicated of one who no longer exists, nor of an office which is vacant. Inability in the incumbent " to perform the duties required *of him* " is what the statute provides for, and only " during such inability."

The original petition in insolvency in this case purports to be addressed to the judge of insolvency for the county of Worcester. There was then no judge of insolvency in that county. No question of the inability of the judge, therefore, could arise.

The decision was made at Boston on the 4th of February 1860.

SHAW, C. J. This is a controversy between different classes of creditors, claiming rights adversely to each other; and the parties have agreed upon a statement of facts, as far as they affect the question of jurisdiction.

The question in the present case depends upon the true construction of the *St.* of 1856, *c.* 284.

This act made considerable alterations in the system of insolvent laws, commencing with *St.* 1838, *c.* 163, and altered and modified by many intermediate acts. One great purpose of the act seems to have been to establish a court of a fixed and permanent character, where all insolvent proceedings should be afterwards commenced and conducted. It constituted a court of record, to be held by a judge commissioned and qualified for the office according to the constitution, to be paid by a fixed salary, such court to be established in a fixed place for keeping its records in the shire town of the county; also to have a recording office and a register to record its proceedings. And all the jurisdiction in cases of insolvency, before that time, vested in judges of probate, masters in chancery, or commissioners of insolvency, was thenceforward to be vested in such court of insolvency. *Dearborn* v. *Ames*, 8 Gray, 1.

There is a provision that the judge, as well in vacation as at a stated court, may do certain things which may be considered as matters of course, which require no order of notice or hearing of parties; implying that the other and ordinary business of the court is to be done in court, and in presence of the register. These considerations are perhaps not otherwise of importance than as they tend to show the fixed and permanent character of the court, and the mode of conducting its judicial proceedings, compared with the former administration of the insolvent laws.

The fifth section of *St.* 1856, *c.* 284, is as follows : " If any of said judges shall, from sickness, absence or other cause, be unable to perform the duties required of him in any case arising within his jurisdiction, or shall be interested in any such case, the duties required of him shall, if such case shall arise in the county of Dukes County or Nantucket, be performed by the judge of the insolvency court of Barnstable County ; and if such case shall arise in any other county than Dukes County or Nantucket, such duties shall be performed by the judge of the insolvency court of that adjoining county having the least number of inhabitants according to the next preceding decennial census. And the register of the court within whose jurisdiction such case shall arise shall make upon the record of the case a certificate of such inability, upon its being made known to him, and shall forthwith transmit a certified copy of the same to the judge whose duty it is to act in the case, and who shall, during such inability, act in the case in the county in which the case shall arise."

Upon a careful examination of this section of the statute, looking at the general scope and purpose of the provision, and at each particular clause and word, we are of opinion that it was not intended to provide for calling in a judge from a neighboring county to hold a court when the office of the regular judge of such court is vacant; but that it was intended to provide for invoking such aid, when the office is full, but when the incumbent is unable, from sickness, absence or other cause of similar kind, to perform the duties which might be justly re-· quired of him, if such disability did not exist.

The importance of this question seems to make it necessary to analyze this section and examine it in detail. The exigency specified by the statute is the inability of the judge, by reason of sickness or absence, not merely when the judge is absent, or when the judge is not present.

Again; no duties can be required to be performed by a deceased person, or by one who has been, but has ceased to be, a judge. These words rightly describe duties to be performed by an absent judge, that is, an existing judge not present. The words are "required of him." If it had been merely "duties of the office," it would have been easy to use other words, or words equivalent, instead of the words "required of him," which imply an existing person. And further, "in any case arising within his jurisdiction" — the jurisdiction of such judge. Can a judge be said to have any jurisdiction, when he is out of office by death or resignation?

A similar argument may be drawn from the clause requiring a certificate to be made by the register of the court. He shall make upon the record of the case a certificate of such "inability" of the judge upon its being made known to him; not of his death or resignation. In the present case, the register did not enter on his book a certificate of the inability of the judge to attend by reason of absence, but the fact of the resignation of Judge Bullock, and the consequent vacancy in the office. We do not mean to say that this certificate was wrong; on the contrary, it is the only certificate he could make with truth, and it was strictly correct.

The theory of construction which would render a vacancy in the office of judge an exigency for calling in a judge of insolvency from another county, would seem to require a certificate to be entered by the register, to some such effect as this :

" I hereby certify, that by the resignation of Hon. Alexander H. Bullock, late judge, &c. the office of judge of insolvency for the county of Worcester is now vacant, and I further certify the inability of the said judge, by reason of absence occasioned by such resignation, to perform the duties required of him."

Such a certificate seems to be almost contradictory; and yet

it only states in words the necessary facts, if the theory of inter-
pretation relied on in support of the jurisdiction of Judge
Hodges is correct. That theory implies that the absence, that
is, the mere non-presence of any judge qualified to act as judge
of insolvency in any county, although there be no such judge,
because the office is vacant, and that fact known to the register
and certified on his record, is an " inability " which, under this
statute, warrants the calling in of a neighboring judge.

Then taking the whole section and reading it through, we can
come to no other result than the one stated, as to the intent and
purpose of the legislature.

It is argued, however, that all the reasons of urgency which
apply to the case of the disability of an incumbent in the office,
apply to the case of a vacancy. In answer to this argument we
say that when the terms of a statute are clear and free from
ambiguity, and the matter is plainly within the scope of just
legislative authority, there is not much room for questioning the
reasons on which the legislature have acted. But there are
some considerations which may have influenced the legislature
in making a distinction between inability of an incumbent and
a vacancy. The inability may continue for months, or even
years, when business would suffer extremely if there is no
relief; and yet no successor can be appointed when there is no
vacancy. But under the appointing power of the executive, the
vacancy may be filled in a fortnight, and ordinarily would be
filled in the course of a few weeks.

It is the manifest policy of the law, that the important judi-
cial duties of a judge of a court of insolvency for a county,
should be performed by a permanent local judge, rather than by
the temporary service of a judge from another county.

If it be said that this judgment comes too late, and after the
irregularity in the commencement of the proceedings has been
too long acquiesced in to be now disturbed, we answer that we
have not the precise date before us at which this bill was filed,
and we think it was not at a great distance of time; but how-
ever this may be, the substantial answer, as it appears to us, is,
that lapse of time could only be evidence of acquiescence and

consequent consent; and in a case like the present, affecting a great variety of persons and interests, consent cannot give jurisdiction.

It is argued, among other things, for the defendants, that the validity of these proceedings in insolvency cannot be drawn in question, in a collateral proceeding. Supposing this argument to be correct, we think its operation is to support this bill which seeks distinctly to set aside the whole proceedings, by a single judgment, and is therefore not a collateral proceeding. Had these plaintiffs brought their action at law, and attached the property of Stone as their debtor, and the assignees had placed their title on the ground of the assignment under the authority of these insolvent proceedings, and the plaintiffs had attempted to sustain their right to attach, because the proceedings in insolvency were void, that would have been a collateral suit, within the meaning of the rule. But this summary proceeding, according to the course of chancery, is given by the original insolvent act, in the nature of an appeal, to any party aggrieved, in order that the validity of the insolvent proceedings may be drawn in question once for all, and sustained or reversed in whole. *Wheelock* v. *Freeman*, 4 Met. 504. Several other cases have been since before us, upon bills in equity to set aside proceedings in insolvency, on the ground that it is the appointed and appropriate mode of determining the legality of the proceedings, and by one judgment affirming or reversing them.

On the whole case, the court are of opinion, that the injunction to stay all proceedings must be made perpetual.

*Decree accordingly.*

NOTE. By the Gen. Sts. *c.* 119, § 4, in case of a vacancy in the office of judge, the duties shall be performed in the same county by the judge of any other county designated by the register. And by *St.* 1860, *c.* 70, all insolvency proceedings before Judge Hodges in the counties of Worcester and Franklin, so far as they were ineffectual or invalid for want of jurisdiction or authority of said Hodges under the *St.* 1856, *c.* 284, § 5, are " confirmed, and the same shall be taken and deemed good and valid in law to all intents and purposes whatsoever "